<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| STANLEY STEPNEY AND KEVIN FREEMAN, | : | Civ. No. 02-5259 (GEB) |
| Plaintiffs, | : | |
| v. | : | **MEMORANDUM OPINION** |
| GARY GILLIARD, et al., | : | |
| Defendants. | : | |

**<u>BROWN, District Judge</u>**

> This matter comes before the Court upon the following motions: (1) defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, and (2) plaintiff's motion for appointment of counsel. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367(a). The Court, having considered the parties' submissions and having decided this matter without oral argument pursuant to Federal Rule of Civil Procedure 78, and for the reasons discussed below, will grant in part and deny in part defendants' motion for summary judgment and grant plaintiff's motion for appointment of counsel.

**I.  BACKGROUND**

> On or about November 13, 2001, plaintiffs Stanley Stepney and Kevin Freeman (referred to collectively as "Plaintiffs") were incarcerated at the Monmouth County Correctional Institution ("MCCI"). Defendants' Br. at 2. At approximately 12:00 noon on that date, Plaintiffs allege that after they requested use of MCCI's law library from defendant Gary Gilliard, then a

corrections officer at MCCI, "Gilliard without provocation, reason or justification assaulted . . . [P]laintiffs, striking both in the face and body."  Complaint at ¶ 10.

　　After the assault, Plaintiffs allege that Freeman requested medical aid for his alleged injuries, which was denied until an investigation of the assault was completed.  Complaint at ¶¶ 11-12.  Later that day, defendant Gilliard wrote a Uniform Staff Report and Officer Howard Furth also drafted a Uniform Staff Report regarding the incident.  See Defendants' Br. at 2.  That same day, plaintiff Stepney wrote to defendant Clifford J. Daniels, warden of the MCCI, and plaintiff Freeman wrote to Deputy Warden Bonforte, making formal complaints about the incident and requesting assistance.  Id. at 3; see Complaint at ¶ 13.  Plaintiffs allege that neither the deputy warden nor warden responded to their requests.  Complaint at ¶ 14.  Plaintiffs allege that as a result of their formal complaints, other officers would "[taunt,] tease and harass" Plaintiffs and take privileges away without justification.  Complaint at ¶ 15.

　　Senior Investigator Sean C. Kelly began an investigation and issued a preliminary memorandum regarding the incident on November 15, 2001.  Defendants' Br. at 3.  On or about November 20, 2001, plaintiff Stepney gave a taped statement concerning the incident, as part of the MCCI's investigation.  Id.  Plaintiff Freeman refused to provide a statement to Investigator Kelly without his attorney present.  Defendants' Br. at 4.  Investigator Kelly continued his investigation and wrote a supplemental memorandum dated November 22, 2001.  Id.  It was later discovered that on the morning of November 13, 2001, defendant Gilliard had a similar incident with inmate Armando Pazo, allegedly punching him in the face.  Plaintiff's Br. at 1; Defendants' Br. at 8.  Soon after this incident and investigation, defendant Gilliard resigned from his position with the MCCI; his last day of work was December 11, 2001.  Defendants' Br. at 4-5.

On or about November 1, 2002, Plaintiffs filed the instant Complaint, alleging one count of violation of the Eighth and Fourteenth Amendments of the Constitution and Section 1983 of Title 42 of the United States Code against Gilliard, one count of an intentional tort against Gilliard under New Jersey law, one count of violation of the Eighth and Fourteenth Amendments of the Constitution and Section 1983 against Daniels, one count of violations of the Sixth and Fourteenth Amendments of the Constitution and Section 1983 against Daniels, and a separate count of violations of the Sixth and Fourteenth Amendment and Section 1983 against Edward J. Stominsky as a member of the Monmouth County Board of Chosen Freeholders.

On or about December 2, 2002, defendant Gilliard filed an answer and cross-claim to the Complaint and defendants Daniels and Stominski filed an answer.  In 2003, Plaintiffs' respective applications to proceed in forma pauperis were granted and plaintiff Freeman acquired counsel. On or about February 3, 2004, plaintiff Stepney filed a motion for, inter alia, appointment of pro bono counsel.  On or about April 8, 2004, plaintiff Stepney's motion for appointment of pro bono counsel was denied for failure to satisfy the factors required for appointment of counsel set forth in Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).

On or about April 19, 2005, plaintiff Stepney filed a subsequent motion to appoint counsel.  On or about April 20, 2005, defendants Daniels and Stominski (collectively referred to as "the Moving Defendants"), filed a motion for summary judgment.  On or about June 10, 2005, defendant Gilliard informed the Court of his reliance on the Moving Defendants' moving papers. On or about June 22, 2005, plaintiff Freeman filed opposition to the motion for summary judgment.  Plaintiff Stepney was granted several extensions of time to file a brief in opposition, but was ultimately denied any further extensions of time to file opposition papers on November

10, 2005.

## II.  STANDARDS

    A.  <u>Standard for a Motion for Summary Judgment</u>

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Orson, Inc. v. Miramax Film Corp.</u>, 79 F.3d 1358, 1366 (3d Cir. 1996); <u>Healy v. New York Life Ins. Co.</u>, 860 F.2d 1209, 1219, n.3 (3d Cir. 1988), <u>cert</u>. <u>denied</u>, 490 U.S. 1098 (1989); <u>Hersh v. Allen Prods. Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).  The threshold inquiry is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986)(noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party.  <u>See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Pennsylvania Coal Ass'n v. Babbitt</u>, 63 F.3d 231, 236 (3d Cir. 1995); <u>Hancock Indus. v. Schaeffer</u>, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  The rule does not increase or decrease a party's ultimate burden of proof

on a claim.  Rather, "the determination of whether a given factual dispute requires submission to

a jury must be guided by the substantive evidentiary standards that apply to the case."  Anderson,

477 U.S. at 255.

Under the rule, a movant must be awarded summary judgment on all properly supported

issues identified in its motion, except those for which the nonmoving party has provided

evidence to show that a question of material fact remains.  See Celotex, 477 U.S. at 324.  Put

another way, once the moving party has properly supported its showing of no triable issue of fact

and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be

"supplemented . . . by depositions, answers to interrogatories, or further affidavits," id. at 322

n.3, "its opponent must do more than simply show that there is some metaphysical doubt as to

the material facts."  Matsushita, 475 U.S. at 586 (citations omitted); see also Anderson, 477 U.S.

at 247-48 (stating that "[b]y its very terms, this standard provides that the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material*

fact.").

What the nonmoving party must do is "go beyond the pleadings and by [its] own

affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate

'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324; see also

Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888 (1990)(stating that "[t]he object of [Rule

56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of

an affidavit.");  Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974

F.2d 1358, 1363 (3d Cir. 1992), <u>cert. denied</u>, 507 U.S. 912 (1993)(stating that "[t]o raise a genuine issue of material fact, . . . the opponent need not match, item for item, each piece of evidence proffered by the movant," but must "exceed[] the 'mere scintilla' threshold and . . . offer[] a genuine issue of material fact.").

The Local Rules supplement the Federal Rules and provide that "each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." L. Civ. R. 56.1. "Where possible, a single joint Rule 56.1 statement is favored." Allyn Z. Lite, New Jersey Federal Practice Rules 192 (2006 ed.)(citations omitted). "Where a joint statement is not prepared, then, under the rule, 'facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.'" <u>Id.</u> at 193 (citations omitted). However, "the parties' L. Civ. R. 56.1 statements cannot bind the Court if other evidence establishes that the stipulated facts are in error." <u>Id.</u> (citation omitted).

B. <u>Standard for Appointment of Counsel</u>

"The Supreme Court has not recognized nor has the court of appeals found a constitutional right to counsel for civil litigants." <u>Parham v. Johnson</u>, 126 F.3d 454, 456 (3d Cir. 1997)(citations omitted). However, a court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). District courts are vested with broad discretionary authority to determine whether counsel should be designated to such a civil <u>pro se</u> plaintiff. <u>See Tabron</u>, 6 F.3d at 153.

> [T]he appointment of counsel for an indigent plaintiff in a civil case under 28 U.S.C. §1915[(e)(1)] is discretionary with the court and is usually only granted upon a showing of special circumstances indicating the likelihood of substantial prejudice to him resulting, for example, from his probable inability without

> such assistance to present the facts and legal issues to the court in a
> complex but meritorious case.

Id. at 154 (citation omitted).  However, the Third Circuit has clearly indicated that courts should be careful in appointing pro bono counsel because volunteer lawyer time is a precious commodity and it should not be wasted on frivolous cases.  See Parham, 126 F.3d at 458. Therefore, the appointment of counsel should be given consideration only if the plaintiff has not alleged a frivolous or malicious claim, but one that has "some merit in fact and law."  Id. at 457 (citation omitted).

If the court determines that the claims do indeed have some merit in fact and law, then additional factors should be considered.  These factors include: (1) the plaintiff's ability to present his or her case based on such factors as education, literacy, prior work experience, prior litigation experience, the substantive nature of the claim, and/or the ability to understand English; (2) the complexity of the legal issues involved and the lawyering skills required for an effective presentation of the claim; (3) whether the claims are likely to require extensive discovery or compliance with complex discovery rules; and (4) whether the case is likely to turn on credibility determinations or if expert testimony is necessary.  See Tabron, 6 F.3d at 155-56.  The Third Circuit noted that this list is not exhaustive, and stressed that the "appointment of counsel remains a matter of discretion; section 1915[(e)(1)] gives district courts broad discretion to determine whether appointment of counsel is warranted, and the determination must be made on a case-by-case basis."  Id. at 157-58 (citations omitted).  Moreover, the court emphasized that these considerations should be balanced against "the significant practical restraints on the district courts' ability to appoint counsel," such as: the growing number of prisoner civil rights actions

7

filed in federal court; the lack of funding to pay for the appointed counsel; the limited number of

competent attorneys willing to undertake such cases without compensation; and the valuable time

lawyers volunteer for such representation.  See id. at 157.

## III. ANALYSIS

    A.    <u>Plaintiffs' Claims Against Defendant Daniels</u>

Plaintiffs assert three counts against defendant Daniels.[1]  First, in Count One, Plaintiffs

claim that Daniels' actions leading up to the alleged assault by defendant Gilliard upon Plaintiffs

and following alleged harassment by John Doe officers, amounted to a deliberate indifference to

the rights of Plaintiffs under the Eighth and Fourteenth Amendment and Section 1983.[2]  Second,

in Count Three, Plaintiffs claim that Daniels' allowing defendant Gilliard to remain employed at

MCCI and have contact with Plaintiffs when he knew or should have known of Gilliard's violent

tendencies, in addition to failing to address the harassment and retaliation committed against

Plaintiffs by the John Doe officers amounted to a deliberate indifference to Plaintiffs'

constitutional rights in violation of the Eighth and Fourteenth Amendments and Section 1983.

Third, in Count Four, Plaintiffs claim that Daniels acted with deliberate indifference in failing to

act upon the requests of plaintiff Stepney to have adequate use of the law library, which

---

[1] Although Count One of the Complaint alleges claims against defendant Gilliard, the Court finds that a proper reading of the content of that Count shows that it alleges claims against defendant Daniels.  Furthermore, the Moving Defendants' brief reaches the same conclusion.

[2] As the Moving Defendants note, Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred . . . ."  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).  "A prima facie case under [Section] 1983 requires a plaintiff to demonstrate: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under color of state . . . law."  Groman v. Twp. of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995)(citing Gomez v. Toledo, 446 U.S. 635, 640 (1980)).

amounted to a violation of the Sixth and Fourteenth Amendments.

      1.  <u>Eighth and Fourteenth Amendment Violations in Counts One and Three</u>

      The Supreme Court has held that two requirements must be met for constitutional liability to attach to prison officials responsible for a prisoner's safety.  "First, the deprivation alleged must be, objectively, 'sufficiently serious[;]' . . . a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]'"  <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)(internal and external citations omitted).  Second, "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'  To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'  In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety . . . ."  <u>Id.</u> (internal citations omitted).  The Supreme Court adopted a subjective test for deliberate indifference and held

> that a prison official cannot be found liable under the Eighth
> Amendment for denying an inmate humane conditions of
> confinement unless the official knows of and disregards an
> excessive risk to inmate health or safety; the official must both be
> aware of facts from which the inference could be drawn that a
> substantial risk of serious harm exists, and he must also draw the
> inference.

<u>Id.</u> at 837.  "[S]ubjective knowledge on the part of the official can be proved by circumstantial evidence to the effect that the excessive risk was so obvious that the official must have known of the risk."  <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d Cir. 2001)(citation omitted). However, "a defendant can rebut a prima facie demonstration of deliberate indifference either by establishing that he did not have the requisite level of knowledge or awareness of the risk, or that, although he did know of the risk, he took reasonable steps to prevent the harm from occurring."

9

Id. (citation omitted).

In Count Three, Plaintiffs appear to allege that Daniels denied them humane conditions of confinement by allowing Gilliard to be employed at MCCI with knowledge of his violent tendencies and by failing to address the harassment of Plaintiffs following their formal complaints, with both claims also seemingly alleged under Count One. Each component will be addressed in turn.

First, asssuming, arguendo, that Plaintiffs' injuries from the alleged incident with defendant Gilliard satisfy the two-prong test from Farmer, there is a genuine issue as to the material fact of whether defendant Daniels knew of Gilliard's violent tendencies, which is a crucial component to the deliberate indifference standard.

In their briefs, both Plaintiffs and the Moving Defendants submitted a statement of undisputed facts pursuant to Local Rule 56. Within their statement of undisputed facts, the Moving Defendants asserted that on or about the morning of November 13, 2001, Officer Gilliard drafted a report detailing an incident he had with inmate Armando Pazo. Defendants' Br. at 8. The Uniform Staff Report filed by Officer Furth indicated that the incident occurred at approximately 7:45 a.m. that morning. Exhibit P to Certification of Kathleen M. Newsham. Pazo alleged that Gilliard punched him in the face for no reason. Defendants' Br. at 8. The Moving Defendants then assert that outside of the incident alleged by Pazo and the incident alleged by Plaintiffs, no other allegations of assault have been made against Gilliard since his hiring in 1988. Id. Further, the Moving Defendants assert that they "provided Plaintiffs with any and all allegations of assault made against Officer Gilliard." Id. at 7. Yet, the cited exhibit in the Certification in Support of Motion for Summary Judgment states that the disciplinary records are

10

attached, but does not include the records.  See Exhibit O, No. 3, to Certification of Kathleen M.

Newsham.  Furthermore, Plaintiffs, in their argument, assert that the Moving Defendants have

not produced Gilliard's personnel records.  Plaintiff's Br. at 3.  The records may be critical

toward the determination of the material fact of whether Daniels knew of any reason to reassign

or terminate Gilliard that would rise to the level of deliberate indifference.  Federal Rule of Civil

Procedure 56(f) requires that "summary judgment be refused where the nonmoving party has not

had the opportunity to discover information that is essential to his opposition."  Anderson, 477

U.S. at 250 n.5.  Furthermore, the court "may make such . . . order as is just" in furtherance of

discovery on the issue.  Fed. R. Civ. P. 56(f).  Without the records, summary judgment must be

denied as to that claim and an order will be entered requiring discovery of the records.

Second, with respect to the harassment claims, Plaintiffs allege that they were "jeered and

taunted" in addition to being "ridiculed, toyed with, [and] called a snitch."  Stepney's Deposition

Tr. at 50-51, Exhibit M to Certification of Kathleen M. Newsham; Freeman's Deposition Tr. at

48, Exhibit N to Certification of Kathleen M. Newsham.  The Court finds that the Farmer prongs

have not been met because verbal harassment and taunting is neither "sufficiently serious" nor

"an unnecessary and wanton infliction of pain" under the common meaning of those terms.

"[V]erbal harassment or profanity alone, 'unaccompanied by any injury no matter how

inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation

of any federally protected right and therefore is not actionable under [Section] 1983."  Shabazz v.

Pico, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)(citations omitted).  See also Collins v. Graham,

377 F. Supp. 2d 241, 244 (D. Me. 2005).  This Court finds that this harassment, assuming it

occurred, does not rise to the level of a constitutional violation actionable under Section 1983.

11

Consequently, summary judgment will be granted on that claim.

As a result, summary judgment shall be granted in part and denied in part as to Count Three of Plaintiffs' Complaint.  Summary judgment is thereby granted as to Count One to the extent it can be construed to allege claims against defendant Daniels for deliberate indifference to the actions of the John Doe officers.  Summary judgment is denied as to Count One to the extent it can be construed to allege claims against defendant Daniels for deliberate indifference to the actions of defendant Daniels leading up to the alleged assault by defendant Gilliard because this claim is essentially the same as that made under Count Three.

### 2. Sixth and Fourteenth Amendment Violations in Count Four

The Moving Defendants allege that plaintiff Stepney's claim of deliberate indifference against defendant Daniels for failure to act upon the requests of Stepney for adequate use of the law library fails to present evidence that he was denied access and, in the alternative, that the claim is precluded for failure to exhaust administrative remedies, pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA").

The PLRA states, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  The statute had been amended from its initial language, and the Supreme Court commented that

> [t]he current exhaustion provision differs markedly from its predecessor.  Once within the discretion of the district court, exhaustion in cases covered by [Section] 1997e(a) is now mandatory.  All "available" remedies must now be exhausted;

12

those remedies need not meet federal standards, nor must they be
"plain, speedy, and effective."  Even when the prisoner seeks relief
not available in grievance proceedings, notably money damages,
exhaustion is a prerequisite to suit.  And unlike the previous
provision, which encompassed only [Section] 1983 suits,
exhaustion is now required for all "action[s] . . . brought with
respect to prison conditions," whether under [Section] 1983 or
"any other Federal law."

* * *

Beyond doubt, Congress enacted [Section] 1997e(a) to
reduce the quantity and improve the quality of prisoner suits; to
this purpose, Congress afforded corrections officials time and
opportunity to address complaints internally before allowing the
initiation of a federal case.  In some instances, corrective action
taken in response to an inmate's grievance might improve prison
administration and satisfy the inmate, thereby obviating the need
for litigation.  In other instances, the internal review might "filter
out some frivolous claims."  And for cases ultimately brought to
court, adjudication could be facilitated by an administrative record
that clarifies the contours of the controversy.

Porter v. Nussle, 534 U.S. 516, 524-25 (2002)(internal citations omitted).

The Moving Defendants assert in their Rule 56.1 statement of facts that the Inmate

Handbook issued by the Monmouth County Sheriff's Office, Department of Corrections, dated

January 22, 2001, sets forth the grievance procedure for inmates to follow.  Defendants' Br. at

15-17.  According to the procedure, inmates must first make a grievance to the Officer, and the

chain of command requires the Officer, if unable to satisfy the grievance at that level of

authority, to refer the grievance to the supervisor, who may then refer the grievance to the

Department Head.  See Exhibit U to Certification of Kathleen M. Newsham.  Beyond the

Department Head, there are then two further levels of authority for the grievance to reach.  Once

a decision has been made along the chain of command, it may be appealed to the Deputy

13

Warden.  Id.

Plaintiffs do not dispute the existence of the grievance procedure set forth in the Inmate Handbook, and there is no evidence in the record that plaintiff Stepney exhausted the requirements of the grievance procedure with respect to his law library claim.  Consequently, the PLRA bars plaintiff Stepney's claim and summary judgment must be granted as to Count Four of Plaintiffs' Complaint.

      B.      Plaintiffs' Claim Against Defendant Stominski

As a preliminary matter, it appears to the Court that Plaintiffs' Complaint does not seek to assert claims against Monmouth County Board of Chosen Freeholders.  The caption of the Complaint simply lists defendant Edward J. Stominski as a member of the Monmouth County Board of Freeholders, and the Moving Defendants agree that he holds such title.  See Defendants' Br. at 1.  In light of Plaintiffs' Complaint not listing the Monmouth County Board of Chosen Freeholders as a separate defendant in the section entitled "Parties and Jurisdiction, Venue," the Court need not consider the Moving Defendants' motion for summary judgment as to claims against the Monmouth County Board of Chosen Freeholders because no claims exist against that body.

Next, the Moving Defendants seek summary judgment of the claims alleged in Count Five because Plaintiffs fail to establish liability on the part of defendant Stominski.  As the Third Circuit stated, "a plaintiff must prove the existence of a policy or custom that has resulted in a constitutional violation in order to make a municipality liable under [Section] 1983.  A municipality cannot be held liable under [Section] 1983 on a respondeat superior theory." Groman, 47 F.3d at 637 (citing Monell v. Dep't of Social Services, 436 U.S. 658, 691 (1978)).

The Third Circuit had previously noted that <u>Monell</u>'s holding "suggests that plaintiff, as an element of establishing the [municipality's] policy or custom of deliberate indifference, must have presented evidence of such indifference on the part of lawmakers or other officials with the authority to make municipal policy." <u>Simmons v. City of Philadelphia</u>, 947 F.2d 1042, 1059 (1991), <u>cert. denied</u>, 503 U.S. 985 (1992).  The Third Circuit thus interpreted Supreme Court precedent "to require that a plaintiff, in order to meet the deliberate indifference standard for directly subjecting a municipality to section 1983 liability, must present scienter-like evidence of indifference on the part of a particular policymaker or policymakers." <u>Id.</u> at 1060-61 (footnote omitted).

Without "scienter-like evidence of indifference," defendant Stominski cannot be held liable.  Plaintiffs fail to present any evidence that demonstrates a genuine issue as to a material fact with respect to the claim of deliberate indifference on the part of defendant Stominski, for both the claim that defendant Stominski knew or should have known that defendant Daniels was not properly supervising errant officers and that defendant Stominski knew or should have known that the policies regarding the use of the law library were inadequate.  Consequently, summary judgment must be granted as to Count Five of the Complaint.

C.    <u>Plaintiffs' Claims Against Defendant Gilliard</u>

Despite defendant Gilliard's letter relying on the Moving Defendants' papers for this motion, the Moving Defendants did not seek summary judgment as to Count Two of Plaintiffs' Complaint alleging an intentional tort by defendant Gilliard against Plaintiffs.  Pursuant to <u>Celotex</u>, summary judgement must be awarded only for properly supported issues identified in the motion.  Consequently, Count Two of the Complaint survives summary judgment.

15

D.     Plaintiff Stepney's Shall Be Granted Pro Bono Counsel

Following disposition of the Moving Defendants' motion for summary judgment, the remaining claims in Plaintiffs' Complaint are the claims of Eighth and Fourteenth Amendment violations due to deliberate indifference on the part of defendant Daniels in allowing defendant Gilliard to remain employed at the MCCI based on what Daniels knew or should have known about Gilliard's past disciplinary record in both Count One and Count Three and the claim against Gilliard alleging an intentional tort under New Jersey law in Count Two.  Complaint at ¶¶ 18-20.

The Complaint was filed by counsel, who, it appears to the Court, was representing both plaintiff Stepney and plaintiff Freeman.  On April 14, 2003, the Court filed an order granting said counsel's motion for withdrawal as attorney.  Following the denial of motions for appointment of counsel, on December 10, 2003, plaintiff Freeman acquired counsel.  It was through this counsel that plaintiff Freeman opposed the Moving Defendants' motion for summary judgment.  Plaintiff Stepney has not acquired counsel and since the filing of the instant motion has failed to file opposition to the motion for summary judgment after at least two grants of extensions of time.

Pursuant to Tabron, "[i]f it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to appointing counsel . . . and if such a plaintiff's claim is truly substantial, counsel should ordinarily be appointed."  Tabron, 6 F.3d at 156 (internal citation omitted).  Given that plaintiff Freeman has acquired counsel for prosecution of the remaining counts in Plaintiffs' joint Complaint, under the present facts the Court finds that it best serves the interests of justice to assign pro bono counsel to plaintiff Stepney.  This appointment is for the purposes of trial and

16

not to reopen prior discovery or motion practice.

## IV.  CONCLUSION

For the foregoing reasons, the Moving Defendants' motion for summary judgment is granted in part and denied in part, and plaintiff's motion for appointment of counsel is granted. Furthermore, the Moving Defendants are ordered to produce the disciplinary records of defendant Gilliard that were allegedly already produced.  An appropriate form of order is filed herewith.

Dated: December 6, 2005

    s/ Garrett E. Brown, Jr.
GARRETT E. BROWN, JR., U.S.D.J.

17